LINN, Circuit Judge,
with whom RADER, Circuit Judge, joins, dissenting-in-part and concurring-in-part.
The statutory arguments that the majority today enshrines fail to justify establishing a separate written description requirement apart from enablement and beyond the priority context, and fail to tether that written description requirement to a workable legal standard. For these and the reasons that follow, I respectfully dissent from Part I of the majority’s opinion, and believe the appeal should have been returned to the panel for resolution of the enablement question. I take no position on the merits of Ariad’s compliance with 35 U.S.C. § 112, paragraph 1; however, I concur in the affirmance of no inequitable conduct.
A. The Statutory Language
Like the majority, I start with the parties’ statutory interpretations. Ariad insists that “ordinary rules of English grammar” and a “plain reading” of § 112, paragraph 1 show that the description of the invention is judged only by enablement — namely, whether it describes “in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.” Ariad’s Principal Br. 2-3. While Lilly relies less on statutory interpretation, it responds that the text delineates two written description requirements — “of the invention” and “of the manner and process of making and using it” — -but that the enablement standard applies only to the latter. Lilly’s Br. 27-28. The amici take varying positions on either side of this debate. See Br. of Amicus Roberta Morris 4-9 (parsing statutory text to show no separate written description requirement); Br. of Amicus Christopher Cotropia 17-20 (arguing that a “plain, grammatically correct reading” mandates a distinct standard for written description).
While the parties offer vigorous arguments about the grammar of § 112, paragraph 1, the only reasonable interpretation is the one offered by Ariad, both because it conforms to the long-recognized purpose of the statute in policing new matter violations and because it tethers the “written description of the invention” to an understood standard: “such full, clear, concise, and exact terms so as to enable.” Lilly remarks that statutes do not necessarily specify their own tests, and that “the legal standards for applying them are developed by courts over time.” Lilly’s Br. 28. Although this might be true generally, Congress did provide such a legal standard in this statute, and the majority’s creation of a separate, additional requirement — with a poorly defined standard — is unnecessary and ill advised. In my view, there is no justification for reading the statute, beyond the priority context suggested by 35 U.S.C. § 120, as requiring anything other than a written description sufficient to enable a skilled artisan to make and use the invention particularly pointed out and distinctly recited in the claims.
The enablement requirement provides an established standard for the propriety of the written description offered to support a set of claims. See In re Wands, 858 F.2d 731, 737 (Fed.Cir.1988) (“The term ‘undue experimentation’ does not appear in the statute, but it is well established that enablement requires that the specification teach those in the art to make and use the invention without undue experimenta *1368 tion.”). The enablement requirement also ensures that the full extent of claims asserted by an applicant have utility, such that the public can make and use the invention recited therein. See In re '318 Patent Infringement Litig., 583 F.3d 1317, 1323-24 (Fed.Cir.2009) (“Enablement is closely related to the requirement for utility.... The utility requirement prevents mere ideas from being patented.”).
B. The Majority’s Proposed Written Description Test
I credit the majority for acknowledging that the “possession” test “has never been very enlightening” and for attempting to clarify that “possession as shown in the disclosure” should be an “objective inquiry into the four-corners of the specification.” Maj. Op. at 1351. Yet, given the court’s concern for public notice, the opinion fails to set the boundaries for compliance with its separate written description test. Commentators have noted our use of variable and confusing vocabulary to delineate the test: that the specification demonstrate “possession,” that the inventor “invented what is claimed,” or that a person of ordinary skill be able to “visualize or recognize” the claimed subject matter. Donald S. Chisum, 3 Chisum on Patents § 7.04[l][e] (2009). Today, the majority confirms the notion that the specification must show that the inventor “actually invented the invention claimed,” Maj. Op. at 1351, but then says that “actual ‘possession’ or reduction to practice outside of the specification is not enough,” id. at 1352. If the specification’s four corners control— not the inventor’s subjective beliefs or activities — then an “actually invented” standard should be irrelevant. Moreover, § 112, paragraph 2 already requires separately that the claims, once issued, objectively claim “the subject matter which the applicant regards as his invention.” See Solomon v. Kimberly-Clark Corp., 216 F.3d 1372, 1379-80 (Fed.Cir.2000).
The language that the majority uses to explain “possession as shown in the disclosure” not only fails to justify a separate test, it also fails to distinguish the test for written description from the requirements for enablement. “[T]he level of detail required to satisfy the written description requirement,” according to the majority, “varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology.” Maj. Op. at 1351. These considerations, however, mirror the Wands factors for enablement, which include “the nature of the invention,” “the breadth of the claims,” and “the predictability or unpredictability of the art.” 858 F.2d at 737. The court attempts to distinguish enablement by observing that “although written description and enablement often rise and fall together, requiring a written description of the invention plays a vital role in curtailing claims that do not require undue experimentation to make and use, and thus satisfy enablement, but that have not been invented, and thus cannot be described.” Maj. Op. at 1352 (emphasis added). Yet, if a person of ordinary skill is enabled to make and use a novel and nonobvious invention clearly recited in the claims, I fail to see how that invention can be said to “have not been invented” or be in need of some undefined level of additional description.
C. Stare Decisis
I cannot accept the majority’s conclusion that the current written description doctrine adopted in Regents of the University of California v. Eli Lilly & Co., 119 F.3d 1559 (Fed.Cir.1997), was created not by the Federal Circuit in 1997, but by the Supreme Court as early as the 19th century, and therefore carries weighty stare decisis effect. Maj. Op., Parts I.B-C. In my view, Ariad thoroughly refutes these arguments.
*1369 First, the history of the Patent Acts does not reveal a separate written description requirement for original claims. Before 1836, the patent statutes did not require patents to contain claims. At that time, a patent’s written description satisfied two requirements: (1) “to distinguish the same [the invention] from all other things before known,” and (2) “to enable any person skilled in the art or science ... to make, compound, and use the same.” Act of Feb. 27, 1793, 1 Stat. 318, 321-22, ch. 11, § 3. Accordingly, the Supreme Court recognized in Evans v. Eaton that a patent’s written description performed the “two objects” to “make known the manner of constructing the machine ... so as to enable,” and to “put the public in possession of what the party claims as his own invention.” 7 Wheat. 356, 20 U.S. 356, 433-34, 5 L.Ed. 472 (1822). Subsequently, the 1836 Act introduced claims to patents by requiring an applicant to “particularly specify and point out the part, improvement, or combination, which he claims as his own invention or discovery,” and simultaneously removed the need for the written description to “distinguish” the invention from “all other things before known.” Act of July 4, 1836, 5 Stat. 117, 119, ch. 357, § 6. Lilly argues that, prior to the 1836 Act, Evans equated “distinguishing” the invention to a modern-day written description requirement. Lilly’s Br. 5. However, Ariad correctly points out that Lilly mistakenly cites the reported attorney argument for that proposition, not the Court’s opinion. Ariad’s Reply Br. 8. More importantly, even if Lilly were correct that the Supreme Court previously enforced a quasi-written description requirement, with the advent of patent claims after Evans, a patent’s written description no longer served to “distinguish” the invention from the prior art.
Despite this statutory background, the majority accepts Lilly’s characterization of post-1836 precedent to conclude that “after the 1836 Act added the requirement for claims, the Supreme Court applied this description requirement separate from enablement.” Maj. Op. at 11. For example, the majority and Lilly rely on Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 59 S.Ct. 8, 83 L.Ed. 34 (1938), which dealt with two patents to Gulick and Maynard for pistons in internal combustion engines. Gulick described “extremely rigid” web elements in the pistons in his original application, but later amended the application to include “flexible” webs. Id. at 56, 59 S.Ct. 8. Wfliile Maynard did not amend his application, flexible webs were “neither described in Maynard’s specifications nor mentioned in his claims.” Id. at 60, 59 S.Ct. 8. The Court held that neither patent could claim flexible web elements because neither disclosed that feature.
The majority claims: “Although the [Schriber] Court did not expressly state that it was applying a description of the invention requirement separate from enablement, that is exactly what the Court did.” Maj. Op. at 1346; see also Lilly’s Br. 11-14. But the Court rejected Gulick’s amended claims because they expanded his original disclosure to encompass “new matter beyond the scope of the device described in the application as filed.” Schriber, 305 U.S. at 58, 59 S.Ct. 8 (emphasis added). The Court also stressed that “the application for a patent cannot be broadened by amendment so as to embrace an invention not described in the application as filed.” Id. at 57, 59 S.Ct. 8. Thus, Schriber required that the invention be “described and explained,” id., but did so to establish priority.
The majority also rests on O'Reilly v. Morse, 56 U.S. (15 How.) 62, 120, 14 L.Ed. 601 (1854), where the Supreme Court invalidated one of Samuel Morse’s telegraphy-related claims for claiming “what he *1370 has not described.” Maj. Op. at 1346 n.4. Lilly cites passages from Morse and highlights every instance of the words “description” or “described.” Lilly’s Br. 8. However, this places too much stock in these words and assumes that “describes” meant in 1854 what the majority would like it to mean today. Morse’s description was deficient because it did not enable the full scope of his broadest claim (to all possible electrical telegraphs), not because it failed the equivalent of a present-day “possession” test for written description.
The majority also suggests that the Supreme Court ratified our current written description doctrine in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). But that decision addressed the scope of prosecution history estoppel under the doctrine of equivalents. The extent of the Court’s allusion to written description is a recitation that applications must “describe, enable, and set forth the best mode,” and that “exclusive patent rights are given in exchange for disclosing the invention to the public.” Id. at 736, 122 S.Ct. 1831. Neither of these statements is a holding that written description applies to originally filed claims, or even that enablement is not the sole measure of disclosure. With all due respect, characterizing Festo as an endorsement of modern written description is at best misplaced.
Until our 1997 decision in Lilly, we applied a written description doctrine from § 112, paragraph 1 to control patent applicants’ claims to priority, but not to invalidate originally filed claims, and without any perceived inconsistency with the statute. E.g., In re Rasmussen, 650 F.2d 1212, 1214 (CCPA 1981) (“The proper basis for rejection of a claim amended to recite elements thought to be without support in the original disclosure, therefore, is § 112, first paragraph....”). Only since Lilly have we forced original claims over a description hurdle extending beyond enablement.
D. Original Claims
In addition to rejecting the majority’s precedent-based arguments, I part ways with the majority’s policy justifications for applying written description to original claims. The majority accepts Lilly’s argument that, “while an original claim is part of the specification, this fact does not mean that original claims must always be an adequate written description of the invention.” Lilly’s Br. 35. This debate is not new. See Univ. of Rochester v. G.D. Searle & Co., 375 F.3d 1303, 1307 (Fed.Cir.2004) (Lourie, J., concurring) (“Thus, the fact that a statement of an invention is in an original claim does not necessarily end all inquiry as to the satisfaction of the written description requirement.”). However, the policy reasons for applying such a requirement to original claims remain unconvincing.
It is beyond dispute that original claims are part of a patent’s disclosure. See id. (Lourie, J., concurring) (“As for the proposition that an original claim is part of the written description, that is clear.”). And our predecessor court repeatedly held that, as part of the disclosure, “original claims constitute their own description.” In re Koller, 613 F.2d 819, 823 (CCPA 1980); see also In re Smith, 481 F.2d 910, 914 (CCPA 1973) (“Where the claim is an original claim, the underlying concept of insuring disclosure as of the filing date is satisfied, and the description requirement has likewise been held to be satisfied.”); In re Gardner, 475 F.2d 1389, 1391 (CCPA 1973) (holding that an original claim sufficiently described itself, and that “[njothing more is necessary for compliance with the description requirement of the first paragraph of 35 U.S.C. § 112”), reh’g denied, *1371 480 F.2d 879, 879-80 (CCPA 1973) (“Under these circumstances, we consider the original claim in itself adequate ‘written description’ of the claimed invention.”). Thus, as I have said before, “[f]or original claims, ... the claim itself evidences] possession of the invention as of the filing date.” Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 988 (Fed.Cir.2002) (Linn, J., dissenting).
It is inconsistent to say that on its filing date, a patent does not show that the inventor “possessed” subject matter that the claims actually encompass and the specification fully enables. Doing so perpetuates an unnecessary tension between the claims and the written description as the definition of a patented invention. See 35 U.S.C. § 112, para. 2 (requiring claims “particularly pointing out and distinctly claiming the subject matter”); Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 339, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (observing that “the claims made in the patent are the sole measure of the grant”). Indeed, the majority reinforces the confusing notion that the primary purpose of claims is “to provide notice of the boundaries of the right to exclude ... not to describe the invention.” Maj. Op. at 1347; cf. Br. of Amicus Oskar Liivak 15 (“The claims are not the invention as a logical, conceptual and practical matter.”). Again, since the 1836 Patent Act, claims have served the purpose of “distinguishing” the invention, while the specification as a whole must “enable.”
The fear that even original claims might “claim[] the invention by what it does rather than what it is,” Lilly’s Br. 35, is unfounded because all claims must satisfy enablement and other requirements for patentability. The majority agrees that “many original claims will satisfy the written description requirement,” but expresses concern that applicants may use “functional language to define the boundaries of a claimed genus,” without disclosing “species sufficient to support a claim.” Maj. Op. at 1349. I agree that such claims should be invalid — but enablement polices those claims effectively. Any claim that uses purely functional language, or covers a broad genus without sufficient supporting examples, will not be enabled. E.g., In re Vaeck, 947 F.2d 488, 495-96 (Fed.Cir.1991) (affirming enablement rejection of genus claims).
Lilly and several amici caution that the written description doctrine protects the public by requiring patentees to provide specific notice of the scope of their inventions. See, e.g., Br. of Amicus Medtronic, Inc. 11-12. This concern is also misplaced. Generally, under 35 U.S.C. § 122(b), patent applications publish eighteen months “from the earliest filing date for which a benefit is sought.” Therefore, the public receives notice of original claims within a specified time. See Br. of Amicus Monsanto Co. 8 (“Regardless of its breadth, the language of an original claim puts skilled artisans on notice that the inventor is claiming such subject matter as the inventor’s own invention.”). Even if the application does not publish before the patent issues, the original claims remain part of the public prosecution history and notify the public of the invention’s scope.
The government submitted an amicus brief in which it asserted that the written description doctrine is “necessary to permit USPTO to perform its basic examination function” and claimed that the Patent Office applies § 112, paragraph 1 to over “400,000 patent applications each year.” Br. of Amicus United States 19-20. However, at oral argument the government could not cite the number of applications that the PTO annually rejects on written description grounds and cannot reject on another basis. See Oral Arg. at 22:42- *1372 24:50. The government also agreed that “enablement is available to address a large number of these problems.” Id. at 28:01-32. Indeed, a study released after argument that reviewed over 2800 appeals to the Board of Patent Appeals and Interferences (“BPAI”) during 2009 found that only 4.3% of those cases decided written description issues, and that none of those outcomes would change if the PTO could continue to issue new matter rejections under 35 U.S.C. § 132. Dennis D. Crouch, An Empirical Study of the Role of the Written Description Requirement in Patent Prosecution 2 (Univ. of Mo. Sch. of Law Legal Studies Research Paper No.2010-06, 2010), available at http://ssrn. com/abstract=1554949. The study concludes that, “in the context of patent applications appealed to the BPAI, the impact of the separate written description requirement is negligible apart from its role in policing the addition of new matter.” Id. at 3. While this research only addressed a small sample of applications and did not consider written description rejections that applicants overcome or do not appeal, these results and the government’s lack of empirical evidence undermine the government’s hypothesis that our patent examination system would grind to a halt if written description no longer applies to originally filed claims. The Patent Office survived well enough before 1997, when it was understood that written description was a basis for rejecting broadening amendments to claims or specifications, not original claims. See Rasmussen, 650 F.2d at 1214.
* * *
The court granted the petition for rehearing in this case to address whether § 112, paragraph 1 contains a written description requirement separate from an enablement requirement and, if so, the scope and purpose of such a requirement. In affirming such requirement, the majority leaves unanswered once again the critical question first presented to the panel of whether the asserted claims of the '516 patent meet the enablement requirement. In my view, the question before the en banc court should have been answered in the negative and the appeal returned to the panel for resolution of the enablement question and Lilly’s remaining invalidity and noninfringement defenses. I concur, however, in the majority’s reinstatement of the panel’s affirmance of no inequitable conduct. For these reasons, I respectfully dissent from Part I of the majority opinion, concur in the ruling of no inequitable conduct, and take no position on the merits of Ariad’s compliance with 35 U.S.C. § 112, paragraph 1.